IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

James Maxwell Gibson,              :

    Plaintiff,                    :

           v                 :    Civil Action No. GLR-13-2040

J. Michael Stouffer, et al.,       :

    Defendants.                   :

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants J. Michael Stouffer, Gregg L. Hershberger, Kathleen Green, and Frank Bishop, Jr.'s (collectively "Moving Defendants") Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 15). Plaintiff, James Maxwell Gibson, has filed a response thereto (ECF No. 17), and the Motion is ripe for disposition. No hearing is necessary. See Local Rule 105.6 (D.Md. 2014).

Gibson, an inmate presently housed at the Western Correctional Institution ("WCI"), complains about the correctional staff tampering with his income and outgoing legal mail, blocking his access to the courts and his ability to file an administrative grievance, and retaliatory transfer. He seeks injunctive relief, to be transferred to Roxbury Correctional Institution, and to be assigned a single cell.

**I. Background**

Gibson alleges he gave his outgoing certified legal mail to Lt. Johnson on December 21, 2006, who intentionally withheld mailing it until January 4, 2007. He further contends that Lt. Johnson opened his mail and removed a letter that was addressed to Mr. R. Koppel, Security Chief at the Maryland House of Corrections from Mr. Blake Hauisee, Laundry Supervisor dated January 23, 2002. Gibson also asserts the contents of the letter contained information which supported his Request for Administrative Remedy ("ARP") appeal, and opines that Lt. Johnson tampered with that mailing to prevent Gibson from prevailing on his appeal.

On January 27, 2009, Gibson alleges he was called for the pickup of incoming legal mail but that officers had already opened the mail he received. On February 24, 2009, he submitted an ARP about the incident. Gibson contends, however, that unnamed Eastern Correctional Institutional ("ECI") personnel threatened him concerning this ARP, and thus, he did not sign the ARP because he feared for his life and safety.

Gibson further alleges ECI personnel intercepted mail he sent to the District Court of Washington County. On January 25, 2010, Gibson filed a tort action with the court. On July 28, 2010, a motion to dismiss was filed by the defendants in the case. Gibson contends that he prepared and mailed a motion in opposition to the court and defendants' counsel, however, he received an Order from the court on August 26, 2010 dismissing the case.

On that same date, Gibson alleges he filed an ARP concerning his response not being received by the Washington County District Court. He also contends that on September 14, 2010, he filed an ARP against Warden Gregg L. Hershberger for retaliation. After the filing of these ARPs, Gibson claims he was notified to pack up for transfer to WCI. He contends this transfer was in retaliation for filing the August 26, 2010 ARP.

On December 20, 2013, Moving Defendants filed a Motion to Motion to Dismiss, or in the Alternative, for Summary Judgment. Gibson filed a response on January 6, 2014. (ECF No. 17).

## II. Discussion

### A. <u>Standard of Review</u>

#### 1. Motion to Dismiss

To survive a Rule 12(b)(6) Motion to Dismiss, a complaint must set forth "a claim for relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678; <u>Twombly</u>, 555 U.S. at 556. In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993).

> [A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)) (internal quotation marks omitted).

### 2. Summary Judgment

"When matters outside the pleading are presented to and not excluded by the court, the 12(b)(6) motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260-61 (4th Cir. 1998) (quoting Fed.R.Civ.P. 12(b)) (internal quotation marks omitted).  Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970)).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 586-87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (alteration in the original).

A "material fact" is one that might affect the outcome of a party's case. Id. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir.) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.

Here, because the Court will consider matters outside of the pleading, Defendants' Motion will be construed as a Motion for Summary Judgment.

**B. Analysis**

**1. Respondeat Superior**

To the extent any of the Defendants are named in their capacity as a supervisory official, the claims against them fail. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Liability of supervisory officials "is

5

not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (citing Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984)).  Supervisory liability under § 1983 must be supported with evidence that:

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like [Gibson];  (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to, or tacit authorization of, the alleged offensive practices;  and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by [Gibson].

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).  Gibson has provided no evidence establishing any of Shaw's three requirements.  Thus, the claims against Defendants in their capacity as supervisory officials will be dismissed.

**2. Failure to Exhaust Administrative Remedies**

Moving Defendants argue Gibson failed to exhaust his claims through an available administrative remedy procedure.  The Court agrees.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e requires inmates to fully exhaust their administrative remedies prior to filing a lawsuit.  42 U.S.C. § 1997e(a) (2012); see also

Porter v. Nussle, 534 U.S. 516, 532 (2002) ("PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Moreover, exhaustion is required even where the relief sought is not attainable through administrative procedures. Booth v. Churner, 532 U.S. 731, 741 (2001). The Courts, however, are "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007).

Thus, the PLRA's exhaustion requirement requires inmates to pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. Chase v. Peay, 286 F.Supp.2d 523, 530 (D.Md. 2003), aff'd 98 F.App'x 253 (4th Cir. 2004). The Maryland Division of Corrections provides inmates three stages in the administrative remedies process. Chase, 286 F.Supp.2d at 529 n.10. First, an inmate may file an ARP with the Warden of the Institution where the inmate is incarcerated. Id. If this Request is denied, the inmate has ten calendar days to file an appeal with the Commissioner of Correction. Id. If this Appeal is denied, the final option available to the inmate is filing an appeal with the Executive Director of the Inmate Grievance Office ("IGO") within thirty days. Id. A claim which has not been exhausted may not be

7

considered by this Court. Jones v. Bock, 549 U.S. 199, 219-20 (2007).

Here, Gibson filed four grievances with the IGO since January 29, 2009. (See Oakley Decl. Ex. 3, ECF No. 15-4). IGO No. 20091834 was filed August 10, 2009 as an appeal from the disposition of ARP-RCI-0607-09, which involved a complaint that Gibson has been effectively denied access to the courts because he had been denied use of RCI's institutional library. Id. This grievance was administratively dismissed for failure to state a claim. Id. IGO No. 20102514 was filed on December 13, 2010 as an appeal from the disposition of ARP-RCI-1157-10, which involved a complaint that Gibson was being transferred to another institution as retaliation for filing an earlier ARP complaint. Id. This grievance was administratively dismissed for failure to properly exhaust the ARP process. Id. IGO No. 20112451 was filed November 9, 2011 involving a complaint that Gibson has been improperly denied the opportunity to wear thermal underwear under his gym shorts. Id. Finally, IGO No. 20120525 was filed March 6, 2012 as an appeal from the disposition of ARP-WCI-0078-12, which involved a complaint that Gibson has been effectively denied access to the courts because he had been denied the use of a copying machine in the library. Id. This grievance was administratively dismissed when Gibson failed to respond to two requests for additional information pertaining to his complaint.

Additionally, on February 25, 2009, Gibson filed ARP-ECI-119-

09, however, he filed an ARP Withdrawal Form concerning the same grievance the next day. (See Ward Decl. Ex. 2, ECF No. 15-3). As a result, the case was closed. Id. Gibson attached to his Complaint a copy of ARP-RCI-1157-10. This is the only ARP offered by Gibson that includes the receipt portion of the grievance completed. Thus, the Court finds that Gibson has failed to exhaust his administrative remedies with respect to his claims concerning his legal mail and access to the courts. Accordingly, these claims will be dismissed as against all Defendants.

**3. Retaliatory Transfer**

Gibson's claim of retaliatory transfer fares no better. Only retaliation for the exercise of constitutional rights is actionable under 42 U.S.C. § 1983 (2012). Am. Civil Liberties Union of Md., Inc. v. Wicomico Cnty., Md., 999 F.2d 780, 785 (4th Cir. 1993). The inmate alleging retaliation "bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

Gibson contends that he was re-assigned to WCI in reprisal for his submitting an ARP. The Constitution, however, does not guarantee access to the grievance process. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Accordingly, Gibson's has failed to set out a colorable claim of retaliation.

### III. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 15), construed as Motion for Summary Judgment, will be GRANTED. A separate Order will follow.

August 6, 2014                                          /s/
                                          _____
                                          George L. Russell, III
                                          United States District Judge